## BANKERS LIFE CO. v. NELSON

(No. 2160; March 11, 1941; 111 Pac. (2d) 136)

For prior opinion, see 56 Wyo. 243, 108 Pac. (2d) 584.

RINER, Chief Justice.

A petition for rehearing, together with brief in aid thereof, in the above entitled case has been filed on behalf of the Bankers Life Company, and substantially the same matters have been re-argued in that brief as were urged for the Company in the original briefing work and argument heretofore presented. We have nevertheless carefully reviewed the cause in the light of what has been additionally said in the petition and brief now before us. Furthermore we have searched the latest decisions of the appellate courts of the nation to ascertain if the views expressed in the opinion heretofore filed in this cause should be regarded as erroneous. The result has been simply to confirm our belief in the correctness of what we previously said.

Relative to the point that the declaration of Nelson to his wife, "I believe I have ruptured myself on that engine", should not have been admitted in evidence as a part of the res gestae of the accident, as the district court decided and as we, too, think was correct, the following cases are pertinent:

In Redrick v. Knapp Bros. Co., 127 Pa. Super. Ct. 92, 193 A. 117, the facts were, as briefly stated in the court's opinion:

"On August 2, 1933, while in customary good health, pursuant to orders, he drove with a fellow employee, Theodore Brown, over to defendant's other warehouse. Brown went inside to deliver some fish. Redrick remained on the truck, unloading some broken boards and rubbish. Brown was gone about three minutes, and when he came back he found Redrick off the truck, on the ground, taking off his shoe. In response to Brown's question as to what was the matter, Redrick said he had run a nail into his foot. There were broken wooden boxes on the truck which might easily have supplied the nail he stepped on. That Redrick was excited about the matter will be evident from the consequencies hereinafter related."

This condition in Redrick's mind resulted, as was found below, in a mental condition of "worry and fear, resulting in a traumatic dementia praecox of the catatonic type, which so debilitated and devitalized the deceased, that he ultimately became subject to convulsive fits which resulted in his death". In the course of the opinion last above mentioned the court said:

"The declaration of Redrick as to his having run a nail into his foot was admissible as part of the res gestae, under the decisions in (citing cases).

"It was made almost immediately after the occurrence and has all the marks of spontaneity and authenticity. That Redrick was laboring under great excitement because of the accident is conclusively shown by its effect upon his mind. The fear and worry that the puncture wound in his foot, caused by stepping on the nail, would produce lockjaw were so great that they caused a serious mental disturbance which brought about his death. We cannot conceive of a case where there was less likelihood of premeditation, design, or ulterior purpose in making the declaration. It measures up to the rigorous standard of utterances admissible as part of the res gestae, that they must be made 'under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thoughts created by, or springing out of, the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation and design.' * * * *

"The declaration as to the accidental injury to Redrick's foot being admissible, there was competent evidence to support the finding of an accidental injury received in the course of his employment."

Of similar purport is the case of Sconce v. Jones, 343 Mo. 362, 121 S. W. 2d 777.

The cases of Marsh v. Preferred Accident Insurance Co. and Marsh v. New York Life Insurance Co., 89 Fed. 2d 932, were suits by his widow upon two life insurance policies to recover for the alleged accidental

death of John C. Marsh. The first was for $5000.00 on the policy of the Preferred Acc. Ins. Co.; and the second for $12,000.00 on a provision of a life insurance policy "contracting to pay double indemnity in case death resulted from bodily injury occasioned solely by accidental means". A verdict was directed below for the defendants, and the cases went to the United States Circuit Court of Appeals for the Sixth Circuit, on the sole question of whether certain evidence should have been excluded. The facts as briefly reviewed by the court were: At the head of the stairs leading to the second floor of the house in which Mr. and Mrs. Marsh lived was a folding screen in three sections. To quote from the court's opinion:

"Marsh retired about 10:30 p. m. March 16, 1933, but before doing so he placed this screen in the stairway. A short time later Mrs. Marsh went downstairs to lock the house and on her return replaced the screen in the stairway. She then retired. She testified that between 3:30 and 4 a. m. she heard a terrible crash, went to the head of the landing, and looked down the stairway. At this point she offered to give the following additional testimony: 'Mr. Pilliod (Dictating to reporter): I found my husband lying on the landing at the foot of the stairs, and the screen had folded up and fallen down. He was lying on the left side of the screen. The screen had fallen, tipped over and fallen on the landing. That was lying on the right side; he on the left. Of course I rushed downstairs. As I came out of my bedroom I shouted: "What was that? What happened?" When I saw him lying there I ran downstairs and he said "I stumbled on the screen and fell downstairs, and I must be terribly hurt; I can't stand." ' "

This offered testimony was excluded. Reversing that ruling, this was said:

"The outcry, 'what was that? What happened?' was not shouted in confidence; it was a spontaneous outburst caused by the crash. It was part of the res gestae. The discovery by Mrs. Marsh of her husband's plight

and the overturned screen was in no sense a confidential disclosure. If she spoke the truth, any other person, located as she was, would have made the same observation. The statement of the deceased, 'I stumbled on the screen and fell downstairs and I must be terribly hurt; I can't stand', was admissible. It was made immediately after the crash and as soon as Mrs. Marsh could run to him. The proposition needs no other support than Travellers' Insurance Co. v. Mosley, 8 Wall. (75 U. S.) 397, 403, 19 L. Ed. 437. There is nothing in the statute involved to indicate that the Legislature intended to abrogate the res gestae rule.

"With the excluded testimony admitted there was substantial evidence for the consideration of a jury."

From the case of Showalter v. Western Pacific Railroad Co. (Cal.) 106 P. 2d 895, a case arising under the Federal Employers' Liability Act, we take the following excerpts:

"Over the objection of the defendant, there was admitted into evidence a statement made by the deceased to Parrott, a fellow brakeman. Parrott did not see the accident, but ran to the side of the deceased where he heard him 'holler'. He found the deceased lying across the tracks under the car which had run over him, cutting off his legs. Upon being asked if he then had any conversation with the deceased, Parrott answered, 'I did—as I remember, I asked him, "How in the world did it happen, Joe?" '—'He said, "I got knocked off." ' Being asked if that were all the conversation, Parrott replied, 'Well, he said, "I am all done, both legs cut off." '

"It is plaintiff's position that these statements of the deceased were properly admissible as part of the res gestae. * * * *

"In our opinion the rule to be followed is that where a declaration is made under the immediate influence of the occurrence to which it relates and so near the time of that occurrence as to negative any probability of fabrication, said declaration is admissible. Measured by this standard we conclude that the ruling of the trial court admitting the statement of the deceased herein was correct. * * * *

"A case so closely paralleling the case at bar that it requires comment is that of Chesapeake and Ohio R. Co. v. Mears, 4 Cir., 64 F. 2d 291, 293, certiorari denied 293 U. S. 557, 55 S. Ct. 69, 79 L. Ed. 659. In said case, it was alleged that Mears was knocked from the top of a car, on which he was walking, by another car placed too close to an adjoining track. No one saw the accident. He was last seen by witness Mills, and when the latter returned about ten minutes later, he found the deceased lying near track three with both legs cut off above the knees and rapidly bleeding to death. Mills asked what had happened, and deceased pointed to the car on track three, replied, 'That car knocked me off.'

"The court therein held the statement admissible and said: 'While a logical basis is not always given for the decisions, the cases almost uniformly hold that a statement made by an injured person as to the cause of his injury is admissible if the time which has elapsed since the injury is so short that he is still under the influence of the happening and his statement presumptively a spontaneous expression growing out of it and not the result of reason and reflection.'

"Said court also cited with approval the early case of Travellers' Ins. Co. v. Mosley, 8 Wall. 397, 19 L. Ed. 437. * * * *

"So far as the record discloses there were no eye-witnesses to the accident in question. Necessarily, therefore, proof of the facts must be based on circumstantial evidence alone. Three other employees of defendant were engaged in the switching operation in question. The defendant called no witnesses, and the plaintiff called only the brakeman, Parrott. There is no conflict in the evidence as the cause was submitted at the close of plaintiff's case."

A judgment for the plaintiff was affirmed.

Another quite recently decided case—decided March 12, 1940,—is that of Collins v. Equitable Life Insurance Company (W. Va.) 8 S. E. 2d 825, 130 A. L. R. 287, wherein the facts were quite like those involved in the instant case. That was a case where the plaintiff obtained a verdict and judgment for "double indemnity

additional accidental death benefit" upon an insurance policy issued by the defendant on the life of her husband. "The double liability", said the court, "depended upon death resulting from bodily injury caused exclusively by accidental means, evidenced by a visible external mark on the body".

The review of the facts given by the court was:

."It was the matutinal custom of the insured, a large man aged forty-three years, to proceed by automobile to within about four blocks of his office, park his car, and then walk the remaining distance. The time he required for the walk is not shown, but it does appear that prior to February 28, 1938, he was a vigorous man, seemingly in good health, and walked rapidly. On the morning of that day he was observed to park his car at the usual place about 7:20 and walk away in his customary manner in the direction of his office. The streets were then icy. No witness saw him thereafter until he reached his office about 7:30, his usual time, when according to an office associate, he was 'very much upset and in quite a bit of pain * * *. He would lay down and then get up * * * He was moaning and groaning. He said he had slipped on the icy pavement and fallen.' Testimony was admitted of like statements made to two persons in a nearby store (who had him taken home in the store truck) and to his attending physician. The latter found him suffering from tingling of both arms below his elbows and from pain in the upper abdomen and chest; other witnesses say his arms were bruised. After about a week he returned to work. His suffering persisted, and he died April 10, 1938. An autopsy was not held. His death was attributed to coronary thrombosis by his physician. He and two other physicians testified that, in their opinion, the thrombosis could have resulted from the fall. Another physician thought not."

Affirming a judgment in plaintiff's favor this language was used:

"But spontaneity rather than contemporaneity is now the generally recognized test of admissibility. 'The spontaneity of the utterance is the guaranty of its

trustworthiness.' Perry v. Haritos, 100 Conn. 476, 124 A. 44, 47. Accord: Starcher v. South Penn Oil Co., 81 W. Va. 587, 599, 600, 95 S. E. 28; Wigmore, Evidence, 2d Ed., §§ 1747 and 1750; 22 C. J., supra, § 549; 20 Am. Juris, Evidence, § 662. So, even if he fell near his car and his statement was not made until nine or ten minutes afterwards, his conduct when it was made, demonstrated that he was still subject to the nervous excitement of the event which initiated his suffering, and gave to his utterance 'an inherent guaranty of trustworthiness.' Jones Ev. on Civil Cases, § 344. We are therefore of opinion that his statement upon arriving at the office was properly admitted.

"We are aware that a number of authorities have said there must be 'a main or principal fact', which the declaration illustrates. Jones Comm. Evidence, 2d Ed., § 1193; 22 C. J., Evidence, § 536. Some authorities go further, saying 'The act itself must be first established before the illustrative declarations can be admitted.' 20 Am. Juris., Evidence, § 666. (This rule was taken from the annotation in 95 Am. Dec. 66, where a number of cases are cited.) Mr. Wigmore says these limitations are 'spurious', having been borrowed from what he terms 'the verbal act doctrine', and having no proper place in the doctrine of res gestae. He further says that expressions such as those above are 'frequent enough', but that there seems to be no ruling in the United States turning directly upon such 'supposed limitations'. Wigmore, Evidence, 2d Ed., § 1752. Whether or not his criticism is well taken, there is unquestionably much confusion on the subject of res gestae. Jones, supra. This, however, seems settled. When a statement is wholly detached from the act it would explain, it is not admissible under either the verbal act or the res gestae doctrine; but when appearances indicate that one has suffered an injury, a statement by him, if spontaneous and reasonably coincident with, and explanatory of, the occurrence, may be regarded as a part of it, and be competent evidence under the res gestae doctrine."

It will be observed that in a number of these cases no one saw the accident, yet the statements by the injured parties were admitted as part of the res gestae

and as independent proof of the actual facts in the accidents and also of their several causes. They fully agree with Professor Wigmore's views as quoted in the original opinion herein and which we believe to be in accord with logical reasoning concerning the matter.

The Insurance Company also says in its brief now before us that: "In the case at bar he (Nelson) came into the house fully an hour after his day's work was done and the engine was supposed to have been shut down for the night". But as shown by Mrs. Nelson's testimony, which was more fully outlined in our former opinion and which the jury of course had a right to take as true, the quotation last above made is, we think, a mistaken view of the evidence. Mrs. Nelson stated that her husband worked over time in his struggle with the engine to make it operate; that she heard it give a great puff and stop; that it would back-fire, a result of defective ignition equipment; that Nelson was always in the best of health before that day in December when the accident occurred; that after the engine stopped, as aforesaid, her husband came directly to the house and made the statement in question; that he then complained of being hurt; and that an immediate examination disclosed the hernia which led to the operation resulting in his death through a weak heart wall which was not able to stand the extra strain. Dr. McLellan's testimony, as we read it, simply disclosed that Nelson had an unknown, nonapparent congenital weakness, tending when put under extra strain to produce a hernia, which ultimately developed as a result of Nelson's severe struggle to make the cold engine function.

Complaint is made that "the court apparently innocently prejudged a Workmen's Compensation case now pending in the District Court of Natrona County". It is asked that all reference to this situation should be eliminated from the opinion. Counsel are again in

error. It was not suggested at the argument or in the briefs of the parties that another case was pending. An examination of the original opinion fails to disclose that we undertook to do anything other than to dispose of the points raised in the instant case. If in so doing something has been said by way of argument or illustration which might be conceived by counsel to incidentally affect pending litigation in the district courts of this State and concerning which we have no knowledge, we fail to see how that is a matter which can be remedied. We cannot revise or alter opinions to meet such a complaint when that is brought to our attention by a petition for rehearing or otherwise. If counsel's position be regarded as correct, it might frequently render it quite impossible to properly write opinions in this court. Further, it is quite clear that the parties to the litigation referred to are not the same as those in the instant case. The rights in that case arise under statutory law and not under contract, as in the case at bar, and counsel may succeed in the district court for aught that now appears. There was no prejudgment on our part of any such pending litigation. Indeed, as we understand counsel, the district court case has not even been tried as yet.

Counsel have presented a written request that oral argument be permitted upon the petition and brief for rehearing because of the fact that counsel's professional engagements prevented their filing a brief of such length as they deemed necessary. This is the first time to our knowledge that a request of this sort has ever been made. It is not in accord with the rules of practice of this Court. Rule 23 provides:

"Application for re-hearing of any cause shall be by petition to the court, signed by counsel, briefly stating the points wherein it is alleged that the court has erred. Such petition shall be filed within thirty days after the decision is rendered and shall be accompanied by a brief (five copies of which shall be filed) of the points

and authorities relied on in support thereof; but there shall be no oral argument, on petitions for re-hearing, unless such argument is requested by the court."

This court, after its re-examination of the cause invoked by the petition for rehearing and brief, aforesaid, being convinced of the correctness of the views hereinbefore expressed in the original opinion in this cause filed, has not requested that oral argument be had and we cannot disregard rules, which, as frequently before has been pointed out, have the force of statute.

In conclusion, it may not be out of place to remind the members of the profession in this State that the rule governing the granting of rehearings in this court has been stated thus in Watts v. Lawrence, 26 Wyo. 378, 188 P. 34:

"We think the correct rule on applications for rehearing is well stated, and supported by the authorities, in 18 Enc. P. & P. 36, as follows: 'Where all the facts presented have in fact been duly considered by the court, and where the application presents no new facts, but simply reiterates the arguments made on the hearing, and is in effect an appeal to the court to review its decision on points and authorities already determined, a rehearing will be refused'."

And 4 Corpus Juris 621 says:

"However, while the power to rehear appeals is comparatively seldom exercised, the appellate courts in most jurisdictions undoubtedly have power to grant rehearings and will do so under proper circumstances. The rule in the United States supreme court is that no reargument will be granted unless some member of the court who concurred in the judgment doubts the correctness thereof and desires a further argument on the subject, and not then unless the proposal receives the support of the majority of the court; but under these conditions the court will order a reargument without waiting for the application of counsel."

Though this court has seldom granted rehearings, as they are defined in our rules, the reports of our decisions are replete with instances, as in the case at bar, where points have been noted and considered at length, the court having thought that some discussion of the points thus raised was proper or necessary. However, if it should be regarded as necessary for us to write two or more opinions in every case decided here, the court's docket would soon become badly congested and we would shortly fall far behind in our work, a condition of affairs which we are glad to say does not now obtain. Litigants and counsel are entitled to have a prompt and efficient disposition of their causes submitted here, consistent with that careful consideration which appellate court work should necessarily receive. This principle we have always endeavored to keep in mind. We must accordingly in the case at bar deny the petition for a rehearing.

*Rehearing denied.*

KIMBALL and BLUME, JJ., concur.