**Nellie Kerr MILES, Appellant
(Plaintiff below),**

v.

**CONTINENTAL CASUALTY COMPANY,
Appellee (Defendant below).**

**No. 3151.**

Supreme Court of Wyoming.

Nov. 19, 1963.

Marvin L. Bishop and Bishop & Bishop, Casper, for appellant.

Edward E. Murane and Murane, Bostwick, McDaniel & Scott, Casper, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Plaintiff, Nellie Kerr Miles, brought action to recover for the alleged accidental death of her late husband, James Noah Miles, to whom defendant had issued a group disability policy. The policy, in form, may be classified as a "Health and Accident Policy" and among other things provided payment of $5,000 for death from "bodily injury caused by accident" and "resulting directly and independently of all other causes in loss covered by this policy." Disability from sickness or disease was also a covered loss. At the trial the jury rendered a verdict for plaintiff but on post-motion the verdict was set aside, judgment was entered for defendant, and plaintiff appeals.

The respective contentions of the parties, briefly stated, present the ultimate question of whether or not, under the circumstances of this case, the cancerous condition of the bone fractured as the result of an accident was a cause excluding the death loss from the coverage of the policy.

There is evidence that the insured, prior to the accident, was a large, robust man, 59 years of age, actively engaged in carrying on a substantial ranching operation and was so engaged on the day of the accident, January 30, 1960. On the morning of that day, while assisting his son in unloading and moving a cow sprayer weighing some 115 pounds, he tripped and fell backward, with the result that the sprayer fell across his left leg and fractured the femur. He was taken to a hospital at Casper, Wyoming, arriving there about 7:00 p. m. Dr. Whiston, an orthopedic surgeon, was placed in charge and the doctor found that insured was suffering extreme pain in the midportion of his left thigh and the thigh itself was badly swollen. X rays were taken and it was discovered that cancer was present in some five inches of the left femur, with an irregular, transverse fracture line running through the affected area. The fracture was identified as a pathological fracture, meaning a fracture through a diseased portion of bone. On February 9, 1960, an X ray was taken of the lungs of insured by a portable machine, and while the X ray was not entirely satisfactory for diagnostic purposes, Dr. Whiston, who also made a clinical examination, and Dr. Jacobson, a radiologist, both said there was no evidence of gross or massive tumor tissue in the lungs at that time. On February 12, 1960, insured was taken to the Mayo Clinic where, in an effort to stop the spread of cancer, the left leg was amputated midway between the knee and hip. Upon return to Casper, Wyoming, insured was placed under the care of Dr. Durham and remained under his care until the time of death, May 4, 1960.

The death certificate, signed by Dr. Durham, gave (a) "Respiratory Failure" as the immediate cause (duration one week) due to (b) Metastatic Osteogenic Sarcoma (duration three months), due to (c) Osteogenic Sarcoma Femur (duration four-five

months?). In lay language this means that cancer was in the left femur for a period of four to five months; that cancer cells were elsewhere in the body for three months; and that eventually the lungs filled to the point where insured was getting no air in the lungs, which was the immediate cause of death.

Again turning to the medical testimony, no purpose would seem to be served by setting it forth at length for the reason that under any reasonable view no real conflict appears. Such evidence discloses that cancer was present in the left femur at the time of fracture and had been there for some time; that it was probably metastatic, which meant that it was transplanted from some other place in the body to the femur and was therefore not trauma-induced; that observable deterioration of the bone was in progress at the time of fracture, although the fracture would not have occurred when it did without the trauma; that the cancer was not dormant and would have caused death irrespective of the fracture; that the fracture accelerated death by increasing the growth and the spread of the cancer to other parts of the body, probably by cells breaking loose into the bloodstream and passing through the heart and the lungs; that the fracture was a substantial contributing cause of death but the cancer was also a substantial contributing cause rather than a remote cause; and that the fracture of the left femur of the insured would not have caused death directly and independently of the cancer.

In view of all of the foregoing, was the trial court warranted, as a matter of law, in entering judgment for the defendant, notwithstanding the verdict for the plaintiff? We think so.

The effect of a pre-existing disease or infirmity on recovery under a policy covering loss for bodily injury caused by accident and "resulting directly and independently of all other causes," or containing provisions of similar import, has been the source of much litigation. The variety of approaches and the divergence in view in meeting the problem are well illustrated by the most recent Annotation in 84 A.L.R.2d 169–317. From this vast array of authority some general principles of rather wide acceptance are laid down, but in final analysis the end result, in a large measure, is dependent on the facts of the particular case. For such reason and for the further reason that we are not without guideposts from our own previous decisions adequate to dispose of the question before us, we undertake no general analysis of the authorities.

In Equitable Life Assur. Soc. of United States v. Gratiot, 45 Wyo. 1, 14 P.2d 438, 82 A.L.R. 1397, we dealt with the effect of an existing "aneurysm" in an artery (described as a bulge which weakens it) which ruptured at that point following an accident, with death resulting from a cerebral hemorrhage. There was evidence that the infirmity was "dormant" or "latent" and the medical testimony of its causal connection with the death was in conflict. Judgment for plaintiff was affirmed and in the course of the opinion many cases dealing with the general subject matter were analyzed and discussed. Judge Blume, author of the opinion, then pointed out: (a) That a policy of insurance should not be so strictly construed as to thwart the general object of the insurance, and provision for loss by accident would not be construed to apply only in case the insured was in perfect health at the time of the accident. (b) That in considering the problem, the difference between proximate cause on the one hand and remote cause or a condition on the other, as recognized in law, cannot be overlooked and even though a disease, bodily infirmity, or predisposing cause exists at the time of accident, it will not defeat recovery unless it is a proximate cause rather than a remote cause or condition. (c) A dormant or latent disease or infirmity which could not reasonably be expected to endanger a normal life span, absent some independent cause such as trauma, is a remote cause or condition that cannot reasonably

be said to be a proximate cause. (d) It is sometimes difficult to determine whether an existing factor should be considered as a condition or remote cause rather than a proximate cause, and in case of doubt the question must be left to the jury.

We add to the foregoing the precepts laid down in Bankers Life Co. v. Nelson, 56 Wyo. 243, 108 P.2d 584, 588, 589, rehearing denied 56 Wyo. 513, 111 P.2d 136. The case dealt with the existing thinness of a heart wall and a potential hernia. It was there said:

"This court has already decided that latent or dormant bodily weakness in itself, on the part of a claimant, is insufficient to be regarded as the proximate cause of a death or injury where the accident sets in motion consequences which otherwise would not have ensued if such latent or dormant condition had not existed. * * *"

In addition, an instruction was approved which is most significant. The instruction in essence was in accord with the pronouncements in the Gratiot case, supra. Such instruction was qualified, however, by this language: "provided you further believe that such other ailments, if any there were, *did not substantially contribute to cause his death.*" (Emphasis supplied.) In other words, if the accident and the pre-existing disease or infirmity were each a proximate cause of death, plaintiff could not recover.

The law of this jurisdiction as established in the foregoing cases, although established at a rather early date, is we think in harmony with general rules of wide acceptance today. See 29A Am.Jur., Insurance, § 1212, p. 351; 84 A.L.R.2d, supra; and 21 Appleman, Insurance Law and Practice, §§ 12483–12484 (1962). Some authorities have criticized the use of the term "proximate cause" as constituting an intermingling of negligence law with the law of contracts (see Browning v. Equitable Life Assur. Soc. of United States, 94 Utah 532, 72 P.2d 1060, 1071, rehearing denied 94 Utah 570, 80 P.2d 348; and 10 Hastings

L.J. 95) but we think such criticism is hardly valid. It is clear that the term is used in the sense of an efficient cause or a substantial contributing cause.

We now apply the above tenets to the facts of this case. Whether we designate the provision of the policy as a "sole cause" provision or an "exclusionary" provision seems unimportant. Kievit v. Loyal Protective Life Insurance Company, 34 N.J. 475, 170 A.2d 22, 30; and Annotation 84 A.L.R.2d, supra. The loss covered was death caused directly by accident and independently of all other causes. With respect to the medical testimony, it is undisputed that the cancer in the left femur was not dormant but on the contrary was active and virulent. Also, that while the accident was a substantial contributing cause of death, so was the cancer.

For such reasons, and giving to plaintiff every favorable inference on the record made, it is clear that there could be no reasonable doubt that the cancer was a proximate cause of death. Consequently, there was no factual question to be determined by the jury and the matter was purely a question of law to be decided by the trial court. We agree with the trial court that plaintiff did not demonstrate a bodily injury resulting in death from accident and thus failed to bring the loss within the coverage of the policy.

In fact, we think that plaintiff does not seriously dispute that the cancer was a substantial contributing cause of death. However, her counsel does urge with some force, as he did in the trial court, that the accident must be held to be the proximate cause of death for the reason that, as shown by the evidence, the accident hastened the progress of the fatal disease. It is true that such is the rule in Arkansas and in at least seven other states (see Annotation 84 A.L.R.2d 216–217).

We took cognizance of the rule in the Gratiot case, supra, but declined to adopt it in favor of the more generally accepted rule of considering the nature of the disease or infirmity and the causal relationship

between the accident and the resultant death. To do otherwise in the instant case would extend the coverage beyond the limits reasonably embraced within the language of the policy.

■ A further contention is made concerning the burden of proof. Plaintiff's counsel says it was not necessary for them to prove that the accident was the sole cause, but only the proximate cause, and if there were present a cause falling within some exception to the policy, the defendant had the burden of establishing such cause, citing Bankers Life Co. v. Nelson, supra. Under the circumstances of the case cited and the Gratiot case, supra, the contention is no doubt a correct statement of law.

■ But where, as here, proof was brought into the record while plaintiff was attempting to make a case in chief that the pre-existing disease of cancer was a contributing factor in the death, and in fact was shown to be the sole cause of death on the death certificate, it was necessary for plaintiff to go further and produce evidence that such disease was not also a proximate cause. Pettit v. United Benefit Life Insurance Company, Mo.App., 277 S.W.2d 857, 864; Lucas v. Metropolitan Life Ins. Co., 339 Pa. 277, 14 A.2d 85, 86, 131 A.L.R. 235; and Worley v. International Travelers Assur. Co., Tex.Civ.App., 110 S.W.2d 1202, 1204. This plaintiff failed to do with the result that no prima facie case was made out. The trial court would have been warranted in sustaining defendant's motion to dismiss at the conclusion of plaintiff's case.

Affirmed.

HARNSBERGER, Justice (dissenting).

The essence of the majority opinion is that an insured must at the time of an accident be in a state of perfect health and physical condition, entirely free from all terminal affliction which might eventually result in death, in order to receive any benefit under the type of accident policy involved in this litigation. Even though the insured would have lived for half a century, except for the accident, recovery must be denied because the accident only accelerated death.

With this I cannot agree.

The far-reaching effect of the majority holding is to render almost entirely valueless the type of insurance which deceased had. Unhappily, many who have this same kind of insurance are misled into believing they have provided insurance compensation only to find when they have suffered accidental misfortune that the presence of some ailment defeats their insurance coverage, notwithstanding it was the accident which shortened their lives.

In giving his reasons for vacating and setting aside the jury's verdict and judgment thereon, the trial judge said, "The jury would be justified in determining that he died *when* he died sooner than he would have but for the fracture, as a direct and proximate result of the accidental fracture and amputation. This seems indisputable." Thus, that death was accelerated by the accidental injury was conceded. Now this court holds, as a matter of law, that an accident which hastens death by inciting to an acute stage an existing terminal affliction is not covered by the insurance because the accident did not cause immediate death, although it aggravated and set in motion an existing physical condition from which death resulted. The trial court itself manifested doubt as to the correctness of its reversal saying, "What the Wyoming rule will finally be is for the appellate court." The effect of what this court now says is that a person suffering, for instance, from such a not unusual chronic affliction as heart trouble, whose expectancy may nonetheless be reasonably prolonged indefinitely by careful living but who is brought to death by heart failure due to shock from serious accident, will now be considered as not having died by reason of the accident as an independent cause but to have died only from heart disease.

We are only concerned with the death that actually occurred. We are not speculating about a death which might later

have occurred. The actual death would not have occurred had there been no accident. It occurred solely and independently from the accident itself, not from any intervening cause. An intervening cause is not a pre-existing condition rendered acutely terminal by accident. Intervening cause is something extraneous to and unconnected with the accident. Intervening cause is one which occurs from unrelated occurrences, such as being shot or stabbed or poisoned or suffering any number of additional or further misfortunes entirely unconnected with the original accidental injury. Under the evidence and by the trial court's own statement, deceased's cancerous death was the direct result of the accident which broke his leg.

The undisputed and conceded facts sum up to mean death would not have occurred *when* it did except for the accidental injury to deceased, yet the court now says it is to be the law in Wyoming that a person, although ostensibly insured against accidental death, must be denied accident insurance recovery even though life is in fact shortened by accident. This is tantamount to saying *there is no insurable value in the continuation of life.* No matter if the insured, though afflicted with cancer, heart ailment, tuberculosis—with any one of a myriad of eventually terminal troubles —would live additional days, months, or years on end had there been no accident, a recovery cannot be had under such accident insurance even though an accident activates a condition which causes death.

As the district court said, it was the jury's right to find the accidental injury brought about the earlier death of the insured. While it is the right of this court to announce the law applicable under the facts thus ascertained, the holding now made should at least serve as warning to the public that in the purchase of the type of accident insurance held by deceased they are buying and paying for an insurance coverage they will never get unless they are perfect physical and health specimens at the time they suffer accident.