Gordon KELLY, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 84-75.

Supreme Court of Wyoming.

Jan. 31, 1985.

Leonard D. Munker, State Public Defender, Martin J. McClain, Appellate Counsel,

and K. Leslie Delk, Asst. Public Defender, Laramie, for appellant; oral argument by K. Leslie Delk.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Michael A. Blonigen, Asst. Atty. Gen., for appellee; oral argument by Michael A. Blonigen.

Before THOMAS *, C.J., and ROSE, ROONEY **, BROWN and CARDINE, JJ.

CARDINE, Justice.

This appeal is from an involuntary manslaughter conviction for which appellant was sentenced to the Wyoming State Penitentiary for a term of not less than twelve nor more than eighteen years. The claims of error, as stated by appellant, are:

"1. Whether the trial court erred in admitting into evidence the hearsay statements of Arnette Goepfert.

"2. Whether James Ratcliff's statements were inadmissible under the dying declaration exception to the hearsay rule since the prejudicial nature of such statements far outweighed their probative value."

We affirm.

On May 29, 1983, the beginning of the Memorial Day weekend, appellant Gordon Kelly, his girlfriend, Arnette Goepfert, and James B. Ratcliff, with tent and fishing gear, left Thermopolis, Wyoming, in Kelly's car. They traveled to the Ten Sleep area where they camped that weekend. During their return trip to Thermopolis on May 31, 1983, they stopped at a Ten Sleep tavern for a few drinks of alcoholic beverage. After leaving the tavern and reentering the automobile, Kelly decided they needed a six-pack of beer and reentered the tavern to make this purchase. Ratcliff decided that Kelly was too drunk to drive and he drove off with Miss Goepfert leaving Kelly behind. As he was driving away, Kelly came out of the tavern, running and yelling "stop," but to no avail.

Kelly hitchhiked back to Thermopolis, going immediately to the Ratcliff trailer where he picked up his car and left. Later that evening Gordon Kelly returned to the Ratcliff trailer. He was angry, became involved in a fight with Arnette Goepfert, grabbed her arm and slapped her. Ratcliff stepped in to calm them down and Kelly began to fight with him. Kelly was violent, struck Ratcliff and knocked him to the floor. Arnette Goepfert tried to stop him but could not, was scared, ran to the neighbor's house to call police to "get Gordon [Kelly] away from [Ratcliff]."

When the police arrived, Ratcliff was in bed and refused medical attention. The next morning, June 1, 1983, Kelly and a friend took Ratcliff to Hot Springs County Memorial Hospital where he remained until June 17, 1983. On that date, he was transferred to a hospital in Cody, Wyoming for surgery. Ratcliff's death on July 14, 1983, resulted from constrictive pericarditis due to scarring around the heart which was caused by blunt force trauma. James Ratcliff was 58 years and Gordon Kelly was 28 years of age at the time of the incident.

I

ADMISSION OF HEARSAY
TESTIMONY OF
CRANDALL

Arnette Goepfert left the Ratcliff trailer to get help during the time Gordon Kelly was beating and stomping James Ratcliff. She ran across the street to the Crandall residence where she telephoned the police, notifying them of the fight at the trailer. Phyllis Crandall, over objection by appellant, was allowed to testify that Arnette Goepfert had stated that evening at her residence that Gordon Kelly first beat her and then beat up James Ratcliff.

█ Appellant objected to the testimony upon the grounds of hearsay. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial * * *." Rule 801(c), W.R.E. Phyllis Cran-

* Became Chief Justice January 1, 1985.

** Chief Justice at time of oral argument.

dall, when testifying, was the declarant. When she repeated the statements of Arnette Goepfert, they were statements made by one other than herself (declarant), and they were hearsay.

Hearsay is generally inadmissible[1] because it is thought to be unreliable and untrustworthy and because there is no opportunity to confront the witness or cross-examine. 29 Am.Jur.2d Evidence § 493. Where, however, a statement is made under circumstances which bring it within an exception to the exclusionary-hearsay rule, it will be admissible. 4 Louisell & Mueller, Federal Evidence § 437 (1980). The hearsay statement of Arnette Goepfert, in this case, was admissible under the "excited utterance" exception of Rule 803(2), W.R.E., which provides that statements are not excluded by the hearsay rule that relate "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The exception is founded upon the proposition that a statement made during the stress of excitement resulting from a startling event is probably trustworthy, since there is not leisure to reflect, contrive or fabricate. *Lancaster v. People*, 200 Colo. 448, 615 P.2d 720 (1980); *Bankers Life Co. v. Nelson*, 56 Wyo. 243, 108 P.2d 584 (1940), rehearing denied, 56 Wyo. 513, 111 P.2d 136 (1941).

The beating and stomping of a 58-year-old man into helplessness resulting in multiple rib fractures on both sides of the chest and of such magnitude as to necessitate surgery is surely a startling event. Because of her involvement in that event, Arnette Goepfert was frightened, scared and ran screaming across the street "bursting" into her neighbor's residence to call the police. In this condition, under the stress of excitement caused by the event, she made the statements to which Phyllis Crandall testified. Generally these questions of admissibility must be determined upon their own facts and circumstances.

*Matter of GP*, Wyo., 679 P.2d 976 (1984). Considering the sudden and violent nature of the assault, Arnette Goepfert's inability to stop it, and her frightened, screaming state, it was not an abuse of discretion for the court to rule the statements admissible under the excited-utterance exception to the exclusionary hearsay rule.

Appellant contends, nevertheless, that the statements should have been held inadmissible because Arnette Goepfert had been drinking intoxicating liquor and was mad at Kelly; therefore, the statements were unreliable and not trustworthy. Whether a hearsay statement is admissible under the excited-utterance exception to the hearsay rule is determined by the nature and effect of the startling event and stress of excitement under which the statement is made. If the witness is competent and the statement is found to be made under conditions which satisfy the excited-utterance exception, it is admissible. Once the statement is held admissible, the weight to which it is entitled and the credibility of the person making the statement may be affected by that person's age, ability, experience, intelligence, mental state, or sobriety. *Goldade v. State*, Wyo., 674 P.2d 721 (1983), cert. denied —— U.S. ——, 104 S.Ct. 3539, 82 L.Ed.2d 844 (1984); *State v. Jeffers*, 135 Ariz. 404, 661 P.2d 1105, cert. denied —— U.S. ——, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983). Appellant adduced evidence of drinking and the mental state of Arnette Goepfert at the time of making the statements. It is assumed that the jury duly considered the evidence of Miss Goepfert's condition and gave the statements the weight to which they were entitled.

## II

## ADMISSION OF DYING DECLARATION

James Ratcliff's daughter was allowed, over objection, to testify to statements made by her father concerning ap-

---

1. Rule 802, W.R.E., provides:
 "Hearsay is not admissible except as provided by these rules or by other rules adopted by the Supreme Court of Wyoming or by statute."

pellant Kelly's beating and stomping him. Testimony as to these statements was also hearsay under Rule 801(c), W.R.E., supra, and inadmissible under Rule 802, W.R.E., supra, unless it also falls within an exception to the hearsay rule.

The statement of the victim, James Ratcliff, was offered into evidence as a dying-declaration exception to the hearsay rule pursuant to Rule 804(b)(2), W.R.E., which provides:

"The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

 * * * * * *

"(2) Statement Under Belief of Impending Death.—In a prosecution for homicide or in a civil action or proceeding, a statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death."

It is uncontroverted that the statement offered was that of a declarant (Ratcliff) in a homicide prosecution and concerned the circumstances of his impending death. Appellant contends only that the statement was inadmissible because not made at a time Ratcliff believed "his death was imminent."

The rationale for the admissibility of a dying declaration is,

"* * * held to rest on the religious belief 'that the dying declarant, knowing that he is about to die would be unwilling to go to his maker with a lie on his lips' * * * [and] the feeling that 'men are not apt to lie in the shadow of death' * * *." 4 Weinstein's Evidence ¶ 804(b)(2)[01] (1984) at p. 804–80.

■■■ For this reason, a statement made while "believing death imminent," is thought to be trustworthy and reliable. But that may not be so. If the statement itself, and the facts and circumstances surrounding the making of the statement, indicate that it is patently unreliable, as where it is speculative, conjectural, or conclusory without any basis in fact or foundation, it should be excluded although made at a time the declarant believed death imminent. *Shepard v. United States*, 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933). In this case the statement of James Ratcliff was not speculative or conjectural, but entirely factual, describing in detail the beating administered by Gordon Kelly. Thus, where the statement is made at a time the declarant believes his death imminent and the statement itself has a factual basis, other facts and circumstances surrounding the making of it may serve to make clearer its reliability. This is so where the statement is corroborative of other testimony and evidence.

■■■ In *United States v. Mobley*, 421 F.2d 345 (5th Cir.1970), the victim was beaten and kicked and the assailant stomped on his chest. An officer interviewed him at the hospital prior to his death. Objection was made to the officer testifying to the victim's statement upon the grounds that the government had failed to prove that the victim was aware of the gravity of his condition or of his impending death at the time of the statement. The court, in ruling upon admissibility, stated that a sense of impending death " * * * may be made to appear 'from the nature and extent of the wounds inflicted being obviously such that he must have felt or known that he could not survive,' " 421 F.2d at 347 (quoting *Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 54, 36 L.Ed. 917 (1892)), and from the testimony of his physician who was " * * * of the opinion that the patient knew that his chances for living were 'very slim,' " 421 F.2d at 347–348. When it also appears that independent evidence of appellant's guilt is overwhelming, the information furnished by the victim is the obvious fact that he has been assaulted and the statement is corroborative of the other evidence, its trustworthiness and reliability is even greater than what flows from belief of imminent death alone, and the statement will be held admissible. *United States v. Mobley*, supra; *United States v. Kearney*, 136 U.S.App.D.C. 328, 420 F.2d 170 (D.C. Cir.1969). Trial courts, in reaching a determination as to the admissibility of this kind

of evidence, will often first hear the evidence out of the jury's presence, and upon finding it "fundamentally reliable," rule it admissible. *United States v. Kearney*, supra.

In this case, on admission to the hospital in Thermopolis on June 1, 1983, James Ratcliff was found to have multiple bruises about his face, head and chest, fractures of six ribs on the left side of his chest and four ribs on the right and a leakage of air into the space between the lungs and the ribs on the right side. A few days after admission, he developed pneumonia, blood leaked into the left side of his chest cavity, and because of low blood pressure he went into shock. He stopped breathing, was revived by artificial respiration and thereafter tubes were inserted into his left chest and trachia, and he was placed on a respirator to assist his breathing. He was in the intensive care unit for a period of time. On June 17, 1983, it was determined that surgery would be necessary if he was to have a chance to survive and he was transferred to a hospital in Cody, Wyoming for that surgery.

Ratcliff's daughter had visited him in the hospital at Thermopolis daily following his admission. When his lung collapsed, she feared that he was not going to survive and she felt then that he knew how bad things really were. The date James Ratcliff was to be transferred to Cody for surgery, his sister inquired when he would go home, and he replied that it would be "a very, very long time, *if ever.*" (Emphasis added.)

▮ At that time and under those circumstances, his daughter inquired what had happened. The fact that the statement by James Ratcliff was in response to this question and, therefore, not spontaneous, does not preclude its admissibility, for

"[i]ndeed, a person in his dying moments may be inclined more toward silence than conversation, and the stimulus of a question may be essential." 4 Louisell & Mueller, Federal Evidence § 488, p. 1124.

If the response to the question is reasonable, indicative of reliability, and the victim is aware of the seriousness of his condition and his impending death, it should be admissible. *Commonwealth v. Dowd*, 472 Pa. 296, 372 A.2d 705, cert. denied 434 U.S. 970, 98 S.Ct. 520, 54 L.Ed.2d 459 (1977).

The daughter testified that:

" * * * Gordon had come to the house and he was mad and upset and he had slapped his girlfriend around and my father had stepped in to try and calm him down. And when he did, Gordon hit him behind the head with something and knocked him to the floor. And then he just started stomping on him.

\* \* \* \* \* \*

"He said he tried to get up and every time he would try to get up, he would kick him back down. And he had even tried to pull the coffee table between himself and Gordon.

\* \* \* \* \* \*

"And Gordon threw the coffee table out of the way and stomped on him some more. And he said at one point in time that Gordon rolled him over so that he could stomp him on the other side. And after that he pretty well lost contact with what was going on. He doesn't remember much after that."

▮ Whether James Ratcliff believed his death was imminent and whether the statement otherwise satisfied requirements for admissibility as a dying declaration is a preliminary question concerning "the admissibility of evidence [and] shall be determined by the court * * *." Rule 104(a), W.R.E.

▮ Thus, in a trial to a jury, it is the province of the court to determine the admissibility of evidence and,

"in this general respect, the admissibility of such evidence [hearsay] lies within the sound discretion of the trial court and its determination is, in the absence of a clear abuse of discretion, conclusive on appeal." 29 Am.Jur.2d Evidence § 715.

▮ The absence of arbitrary determination and the exercise of a discriminating judgment within the bounds of reason are

the essence of discretion. *Sanford v. Smith*, 11 Cal.App.3d 991, 90 Cal.Rptr. 256 (1970).

" '[D]iscretion' contemplates a process of reasoning which depends on facts that are in the record or are reasonably derived by inference from the record, and yields a conclusion based on logic and founded on proper legal standards." *Shuput v. Lauer*, 109 Wis.2d 164, 325 N.W.2d 321, 328 (1982).

We have said that:

"A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did." *Martinez v. State*, Wyo., 611 P.2d 831, 838 (1980).

Here there was no abuse of discretion in the court's ruling the statement of James Ratcliff admissible. The daughter feared her father was not going to survive and testified that she believed he knew how bad things really were. James Ratcliff's condition had steadily worsened following his admission to the hospital and, on the date of his statement, he stated that he did not believe he would ever be going home. From the severe beating and the extensive injuries to his head and back, the ten broken ribs and collapsed lung, he must have known he could not survive.

 We note also that the statement of James Ratcliff is mostly corroborative of Goepfert's testimony that Gordon Kelly had beaten James Ratcliff to the extent that she said, "enough is enough," and she called the police to get Gordon Kelly off James Ratcliff. Ratcliff's statement was consistent with the severe beating he suffered. It was factual. There was nothing speculative or conjectural about it. Upon all the facts and evidence, the court could reasonably conclude that the statement was made when James Ratcliff "believed his death was imminent" and that it was trustworthy and reliable. The court's ruling admitting this statement was

within the bounds of reason, supported by the evidence, not arbitrary, nor an abuse of discretion, and it will not be disturbed on appeal.

 Appellant next contends that the statement should not have been admitted because it was made two weeks after the beating which permitted time for reflection and fabrication. Passage of time between the incident causing death and the death is a factor to be considered together with all other facts and circumstances as it might bear upon the question: whether declarant believed his death imminent. *Johnson v. State*, Alaska, 579 P.2d 20 (1978); 4 Louisell & Mueller, Federal Evidence § 488, p. 1114. But that factor alone is not determinative of the question, for circumstances may be such that death may not at first be imminent, but may become so with an injury that does not respond to treatment and finally results in death. If a statement is then made with knowledge that death is imminent, that is sufficient.

 Appellant finally contends that the prejudicial impact of the statements outweighed their probative value and that they should have been ruled inadmissible under Rule 403, W.R.E., which provides:

"Although [R]elevant * * * evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice * * *."

Relevant evidence is defined as

" * * * evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, W.R.E.

Generally, all relevant evidence is admissible. *Grabill v. State*, Wyo., 621 P.2d 802 (1980); Rule 402, W.R.E. Most relevant evidence offered by the State in a homicide case such as this is harmful, even prejudicial. But that is not enough. It must also appear that it is unfair, *Elliott v. State*, Wyo., 600 P.2d 1044 (1979), and that the evidence has little or no probative value, is extremely inflammatory, or introduced for

the purpose of inflaming the jury. *Apodaca v. State*, Wyo., 627 P.2d 1023 (1981). The decision of the trial court, in ruling whether evidence should be excluded because its probative value is outweighed by the danger of unfair prejudice, is reviewable only for an abuse of discretion. *Sanville v. State*, Wyo., 593 P.2d 1340 (1979).

James Ratcliff suffered massive injuries which others described as resulting from a beating. Arnette Goepfert testified that she called the police because she thought the fight had gone too far. She said, "I mean a fight is a fight, all right? Enough is enough." There was no other testimony as to the nature of the beating or the manner in which the injuries were inflicted except the dying declaration of James Ratcliff. That evidence was necessary for the jury to understand the cause of the injuries and whether and how they resulted in Ratcliff's death. In that context it was prejudicial, but we cannot find that it was unfairly prejudicial as to require exclusion by the rule. The trial court, therefore, did not abuse its discretion in admitting this evidence.

There being no error in the admission of the statements of Arnette Goepfert, and the declarations of James Ratcliff, the judgment is affirmed.